UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE GRAHAM, on her own behalf
and all similarly situated individuals,

    Plaintiff,

v.                                                   Case No. 8:16-cv-01324-JSM-AAS

PYRAMID HEALTHCARE SOLUTIONS,
INC.,

    Defendant.
_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND NOTICES TO SETTLEMENT CLASS**

COME NOW Plaintiff DENISE GRAHAM ("GRAHAM"), on her own behalf and all similarly situated individuals, and Defendant PYRAMID HEALTHCARE SOLUTIONS, INC. ("PYRAMID") and, pursuant to Federal Rule of Civil Procedure 23, file their Joint Motion for Preliminary Approval of Settlement and Notices to Settlement Classes, respectfully states as follows:

**I.**    **NATURE AND STAGE OF PROCEEDING**

In her Class Complaint ("Complaint"), Graham alleges that Pyramid willfully violated the disclosure and authorization provisions of the Fair Credit Reporting Act ("FCRA") in 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) by obtaining consumer/background reports on Graham and employees/prospective employees during the period beginning May 3, 2014 and continuing until August 31, 2016,[1] without first disclosing to them in a separate disclosure solely containing the statutory language, and included additional language not permitted under the FCRA.

---

[1] At this time, Pyramid began using a different CRA and disclosure form that is not at issue in this case.

On June 28, 2017, the Court certified the following class:

> All Pyramid Healthcare Solutions, Inc. employees and job applicants who applied for or worked in a position at Pyramid Healthcare Solutions, Inc. in the United States and who were the subject of a consumer report that was procured by Pyramid Healthcare Solutions, Inc. within two years of the filing of this complaint and as to whom Pyramid Healthcare Solutions, Inc. used the employment application and purported disclosure and authorization form substantially similar to **Exhibit A**.

On July 24, 2017, the parties jointly requested, and the Court granted, a sixty (60) day stay of the case to permit them the opportunity to enter into settlement negotiations with the intent to resolve the case. Since that time, Graham and Pyramid have been engaged in extensive settlement negotiations. Their efforts have culminated in settlement of the class as defined by the Court. The parties thereafter executed a Settlement Agreement attached to this motion as Exhibit 1.

The Class consists of 321 members to be paid ONE HUNDRED DOLLARS AND NO/100 ($100) each, for a Gross Settlement Fund of THIRTY TWO THOUSAND ONE HUNDRED DOLLARS AND NO/100 ($32,100.00). This is a "claims paid" settlement. Each Class member who does not opt out will automatically receive $100 checks after final approval. The amount received by each Class member is not subject to reduction for any reason. Attorneys' fees, litigation expenses and administration expenses are being paid separately by Defendant.

Graham will receive SEVEN THOUSAND FIVE HUNDRED DOLLARS AND NO/100 ($7,500.00) as a service award.

Defendant has agreed to pay Class Counsel attorneys' fees and litigation expenses not to exceed ONE HUNDRED THIRTY FIVE THOUSAND DOLLARS ($135,000) if approved by the Court. Attorneys' fees were negotiated separate and apart from the class settlement. Payment is independent and will not be paid from the Settlement Fund or otherwise reduce any payments made to Class members.

**II.     STATEMENT OF ISSUES**

The issues before the Honorable Court are (a) whether to approve the Agreement on a preliminary basis, and (b) whether to approve the Notice of Proposed Class Action Settlement for distribution to members of Class.

**III.    STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23. "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable…" *In re: Corrugated Container Antitrust Litigation*, 643 F.2d 195, 206 (5th Cir. 1981); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[2] *see also* Fed. R. Civ. P. 23(e)(2).

A strong presumption exists in favor of a settlement's fairness. *Parker v. Anderson,* 667 F.3d 1201, 1209 (5th Cir. 1982); *Cotton*, 559 F.2d at 1331. Settlements are "highly favored" and "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). The public policy favoring settlement agreements is particularly strong in complex class action litigation where voluntary pretrial settlements obviate the need for expensive and time-consuming litigation. *See Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985); *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996). Absent fraud or collusion, trial courts should be hesitant to substitute their own judgment for the judgment of counsel in arriving at a settlement. *Cotton*, 559 F.2d at 1330.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### IV. MEMORANDUM OF LAW

#### A. THE PROPOSED SETTLEMENT SHOULD BE APPROVED BECAUSE IT SATISFIES THE TEST FOR FAIRNESS, REASONABLENESS, AND ADEQUACY

The Eleventh Circuit Court of Appeals uses a six-factor test for assessing the fairness, reasonableness, and adequacy of a class settlement. The factors are: **(a)** whether the settlement was a product of fraud or collusion**; (b)** the complexity, expense, and likely duration of the litigation; **(c) the** stage of the proceedings and the amount of discovery completed; (d) the point on or below the range of possible recovery at which a **settlement** is **fair**, adequate and **reasonable; (e)** the possible range of recovery and the certainty of damages; and **(f)** the respective opinions of the participants, including class counsel, class representatives, and absent class members. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), *citing* 1982–2 Trade Cas. at 72, 106, *citing, inter alia, Container II,* 643 F.2d at 207–08; *Cotton v. Hinton,* 559 F.2d at 1330–31; *Miller v. Republic National Life Insurance Co.,* 559 F.2d 426, 428–29 (5th Cir.1977). Consideration of these factors indicates that the proposed settlement in this case is fair, adequate, and reasonable and that preliminary approval of the settlement should be granted.

##### 1. The Settlement Agreement Is Not the Product of Fraud or Collusion.

In assessing this factor, courts must presume that no fraud or collusion occurred unless there is evidence to the contrary. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). There is no evidence of fraud or collusion here. The proposed settlement in the Agreement resulted from arm's length negotiations between Graham and Pyramid conducted by capable, experienced attorneys. Settlement discussions and steps related to potential settlement took place over an extended time period spanning approximately sixty (60) days following extensive litigation including written and deposition discovery, motions to dismiss and summary judgment, and certification of the class by the Court. During this process, the parties thoroughly evaluated their

4

claims and defenses in order to negotiate what they believe is the most optimal settlement on behalf of the settlement class.

The absence of fraud and collusion is evidenced by a settlement reached only after over a year of litigation and briefing of the issues, each shedding light on the particular advantages, risks and uncertainties both parties face in this class litigation. Additionally, there is no evidence that Graham sacrificed the interests of the Settlement Class for her own financial gain.  Under the Agreement, Graham will receive the same $100.00 settlement payment as the other members of each Settlement Class. And, she only requests a modest service award of $7,500.00, fully justified based on sitting for her continued participation and work up of the case, including full days of deposition and mediation.

The proposed settlement reached by Graham and Pyramid resulted from concessions and compromise by the parties.  The Agreement is a product of the functioning of the adversarial and negotiations processes, not fraud or collusion. Accordingly, the first factor supports approval of the settlement.

**2.     Litigating this Case Through Trial Would Be Complex, Expensive, and Time-Consuming.**

Although the total expenses that the parties will incur if this litigation progresses and the duration of the litigation, including the appellate process, cannot be predicted with certainty, the history of this litigation indicates that Graham and Pyramid will vigorously advocate for their respective positions on various legal and factual issues that will likely entail significant motion practice.  Pyramid denies liability for any willful violations of the FCRA and asserted numerous affirmative defenses to Graham's individual and alleged class claims as set forth in its Motion to Dismiss, Answer, and Motion for Summary Judgment.

Furthermore, the parties will incur significant expenses for decertification and likely appeal of the certification of the class; two issues where Graham and Pyramid's positions clearly differ. Trial and a potential of post-trial appeals further increases the costs and delay of litigation.

There is no reason to believe that issues raised before, during, or after a trial would be any less vigorously litigated by the parties or less expensive and time-consuming to resolve. Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted litigation. The proposed settlement will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement. Thus, this factor weighs in favor of approving the settlement proposed in the Agreement. *See Bennett,* 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Ayers v. Thompson*, 358 F.3d 356, 2369 (5th Cir. 2004) (fact that settlement would avoid risks and burdens of potentially protracted litigation weighed in favor of approving settlement).

### 3. Settlement Class Counsel Has Adequate Discovery and Other Information to Realistically Value the Claims.

The parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Graham and Pyramid engaged in formal written discovery and depositions. Both parties cooperated in exchanging information sufficient to allow a well-informed and comprehensive settlement of the Class. Pyramid obtained records from the CRA for the relevant time period and determined that the Class consists of 321 individuals, including Graham. Pyramid provided this information to Graham who had the opportunity by third-party discovery to obtain its own information from the CRA. Pyramid has also identified and produced copies of the documents, policies, and procedures that pertain to the allegations in the complaint. Furthermore, Graham has cooperated in responding to Pyramid's written discovery requests.

In addition to this formal exchange of information, as indicative by the parties' briefing in connection with Pyramid's Motion for Summary Judgment and Graham's Motion for Class Certification, the parties have extensively analyzed legal authorities regarding FCRA claims on a nationwide basis. Counsel for the parties have discussed their claims and defenses with each other.

As such, the parties believe that they have sufficient information to reach a fair, reasonable, and adequate settlement. The Agreement was negotiated based on the parties' realistic, independent assessments of the merits of the claims and defenses in this case and should be approved.

> **4. Ultimate Success on the Merits of the Claims Is Uncertain Given the Risks of Litigation.**

When evaluating a proposed class action settlement, the court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation. *See Bennett,* 737 F.2d at 986*; Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Here, recovery under the Agreement is favorable for the 321 Class members, especially given the stage of litigation at which this settlement has been reached, the general uncertainty surrounding all litigation, and the risks specific to this case.

If this litigation proceeds, Pyramid intends to continue to vigorously defend the claims, and Graham and the settlement class will face legal challenges by Pyramid, including challenges to merits of their claims, decertification, and an appeal on class certification. Because the parties have reached an early settlement, Graham has not prevailed on class certification and summary judgment. Any one of these challenges could significantly prolong the litigation at considerable expense to the parties and potentially result in no recovery for the class members. Each of these phases of litigation presents uncertainty and risks, which the settlement allows the parties to avoid.

Without this settlement, in order for members of the settlement classes to recover any statutory damages under the FCRA, they must not only prove that Pyramid failed to comply with

the adverse action provisions, but also that Pyramid did so willfully. *See* 15 U.S.C. § 1681n(a). Although Graham contends that the violations were willful, Pyramid will contest the question of willfulness if the lawsuit is further litigated. And, absent the settlement, continued certification under the current class definition is not certain. Although Pyramid denies liability and has asserted affirmative defenses to the claims, Pyramid nevertheless recognizes, as Graham does, the risks inherent in proceeding to trial.

A negotiated settlement that provides immediate relief is preferable to protracted litigation and an uncertain result in the future. Weighed against the risks associated with litigation, the proposed settlement is fair, reasonable, and adequate.

### 5. The Settlement Agreement Is Fair in Light of the Possible Range of Recovery and Certainty of Damages.

The Agreement should be approved because the proposed settlement compares favorably to the limited range of damages available under the FCRA that could potentially be recovered at trial. In his Complaint, Graham seeks to recover compensation under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for herself and the other class members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorneys' fees and costs.[3] However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as

---

[3] Section 1681(n)(a) of the FCRA states that a person who willfully fails to comply with any requirement under 15 U.S.C. § 1681 *et seq.* regarding a consumer is liable to the consumer in an amount equal to the sum (a) "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;" (b) punitive damages in such amount as the court may allow; and (c) the costs of an action, if successful, to enforce liability under this Section plus reasonable attorneys' fees as determined by the court. 15 U.S.C. § 1681n(a)(1)(A), (2)-(3) (emphasis added).

Graham believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome.

The settlement proposed in the Agreement secures a monetary payment of $100.00 to each member of the Class. A settlement check in this amount is a reasonable and comparable sum of money to be paid in a class action under the FCRA.  Even if the settlement class established liability against Pyramid for willful violations of the pertinent provisions of the FCRA, a real risk exists that the class members could recover less after successfully litigating their claims through trial than the payment negotiated by the parties in the Agreement.

Settlement Class Counsel believes that the proposed payment of $100.00 to each member of the Class is a good settlement. Other recent FCRA cases that have been settled have provided similar or less relief to class members.  *See, e.g.*, *Marcum v. Dolgencorp, Inc*.; No. 3:12-cv-00108 (E.D. Va. 2014) ($53 gross payment per class member reduced by attorneys' fees and service awards paid from class settlement fund); *Knights v. Publix Super Markets*, *Inc.*; No. 3:14-cv-006720 (M.D. Tenn. 2014) ($48.55 paid to each class member); *Pitt v. Kmart Corp.*, No. 3:11-cv-00697 (E.D. Va. 2013) ($18 or $38 received by class members depending on date of FCRA violation).

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes.  "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010).  Balancing the risk that liability cannot be established against Pyramid for willful violations of the disclosure, authorization, and pre- and post-adverse action notice provisions of the FCRA against the range of possible recovery of damages supports settlement.

9

### 6. Settlement Class Counsel and the Parties Support the Settlement.

As evidenced by the Agreement itself and this Motion in which the parties jointly request approval of the settlement, the terms of the settlement as proposed have the obvious support of Graham, Settlement Class Counsel, and Pyramid. Graham and Pyramid believe, based on their independent assessments, that settlement is in their respective best interest. Graham and Settlement Class Counsel have likewise concluded that the proposed settlement is in the best interest of the Background Check Settlement Class and Adverse Action Settlement Class.

Furthermore, the parties anticipate that the settlement will receive broad support from putative class members, especially considering that each individual member will receive a settlement check that is reasonable and consistent in the context of class action litigation. Even if applicants in the settlement classes were able to overcome the difficulties of financing and finding legal counsel to pursue their relatively small individual claims, few members of the settlement classes are likely to be inclined toward pursuing their individual claims.

Therefore, it is unlikely that settlement class members will oppose releasing their pertinent FCRA claims that in reasonable probability they never intended to bring, or were unaware to have possessed. Even if any putative class member does not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed class settlement and retain his or her individual FCRA claims against Pyramid rather than participating in the settlement.

The parties believe that the Agreement represents a fair, reasonable, and adequate settlement. Consequently, the support of Graham, Settlement Class Counsel, the putative class members of each settlement class, and Pyramid weighs in favor of approving the settlement.

B. **THE NOTICE OF CLASS ACTION SETTLEMENT SHOULD BE APPROVED BECAUSE THE FORM AND MANNER OF EACH NOTICE SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.**

The Notice of Proposed Class Action Settlement to be mailed to the Settlement Class is appended to the Agreement as Exhibit A. See Ex. 1, Agreement, Ex. A. The content of the proposed class notice and the method for notifying members of each settlement class satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comport with due process.

Under Rule 23(e)(1), when approving a class action settlement, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition, for classes certified under Rule 23(b)(3), courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) also sets out the required contents of the class notice. *Id.* The procedures described in the Agreement for informing class members of the settlement and the Notice of Proposed Class Action Settlement comply with these Rules.

The proposed notice plan is reasonable and provides the best notice practicable to the respective settlement classes. Under the Agreement, the Notice of Proposed Class Action Settlement will be sent to each class member via first class mail and e-mail to the last known addresses of class members based on information contained in Pyramid's records. *See* Ex. 1, Agreement. Notice by mail is recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos*, 240 F.R.D. at 296 (sending notice by mail is preferred when all or most class members can be identified). The Agreement also

11

includes provisions to ensure that a reasonable effort is made to locate members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible. *See* Ex. 1, Agreement.

Additionally, the Agreement provides for the creation of an internet site which will make available all of the relevant pleadings and settlement documents, and will be administered by a third-party Settlement Administrator selected by the parties and paid from separately allocated funds in the Settlement Fund. *See* Ex. 1, Agreement.

The content of the Notice of Proposed Class Action Settlement satisfies Rule 23(c)(2)(B) and due process requirements. "A settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litigation,* 628 F.3d 185, 197 (5th Cir. 2010). Due process is satisfied if the notice provides class members with "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*

The Notice of Proposed Class Action Settlement to each of the classes is written in language that is easy to understand. The Notice informs members of the nature of the case, the definition of the settlement class, and the claims and defenses. The Notices of Proposed Class Action Settlement also contain information regarding the right to retain their own attorney, their right to request exclusion from the class, the time and manner for requesting exclusion, and the binding effect of the class judgment. *See* Ex. 1, Agreement, Ex. A, Notice; *see also* Fed. R. Civ. P. 23(c)(2)(B). Because the Notice of Proposed Class Action Settlement communicates the essential terms of the proposed settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the respective settlement classes.

## V. CONCLUSION

The Court should approve the Agreement on a preliminary basis because the proposed settlement is fair, reasonable, and adequate. The Notice of Proposed Class Action Settlement should be approved for distribution to the Settlement Class because it meets the requirements of Rule 23 and due process.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Denise Graham, on her own behalf and all similarly situated individuals, and Defendant Pyramid Healthcare Solutions, Inc. request that the Court grant their Motion and enter an Order of preliminary approval. Graham and Pyramid request such other and further relief, at law or in equity, to which they may be justly entitled.

DATED this 3rd day of October, 2017.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| */s/ Marc R. Edelman* | */s/ Jennifer Monrose Moore* |
| MARC R. EDELMAN | JENNIFER MONROSE MOORE |
| Florida Bar Number 0096342 | Florida Bar Number 035602 |
| E-mail: MEdelman@forthepeople.com | E-mail: jennifer.moore@ogletree.com |
| | GRANT D. PETERSEN |
| MORGAN & MORGAN, P.A. | Florida Bar Number 0378682 |
| 201 North Franklin Street, Suite 700 | E-mail: grant.petersen@ogletree.com |
| Tampa, Florida 33602 | VANESSA A. PATEL |
| Telephone: 813.223.5505 | Florida Bar Number 103928 |
| Facsimile: 813.257.0572 | E-mail: vanessa.patel@ogletree.com |
| | |
| ANDREW R. FRISCH | OGLETREE, DEAKINS, NASH, SMOAK |
| Florida Bar Number 0027777 | & STEWART, P.C. |
| E-mail: AFrisch@forthepeople.com | 100 North Tampa Street, Suite 3600 |
| | Tampa, Florida 33602 |
| MORGAN & MORGAN, P.A. | Telephone: 813.289.1247 |
| 600 North Pine Island Road, Suite 400 | Facsimile: 813.289.6530 |
| Plantation, Florida 33324 | |
| Telephone: 954.967.5377 | *ATTORNEYS FOR DEFENDANT PYRAMID* |
| Facsimile: 954.327.3013 | *HEALTHCARE SOLUTIONS, INC.* |
| | |
| C. RYAN MORGAN | |
| Florida Bar Number 0015527 | |
| E-mail: RMorgan@forthepeople.com | |

MORGAN & MORGAN, P.A.
20 North Orange Avenue, 14th Floor
Post Office Box 4979
Orlando, Florida 32802-4979
Telephone: 407.420.1414
Facsimile: 407.245.3401

*ATTORNEYS FOR PLAINTIFF*
*DENISE GRAHAM*

31302581.2