# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DENISE GRAHAM, on her own behalf
and all similarly situated individuals,**

**Plaintiff,**

**v.**                                                    **CASE NO.:8:16-CV-1324-JSM-AAS**

**PYRAMID HEALTHCARE SOLUTIONS, INC.**

**Defendant.**

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND A CLASS REPRESENTATIVE INCENTIVE AWARD

Plaintiff, Denise Graham ("Plaintiff" or "Graham"), by and through her undersigned counsel, files this Motion for an Award of Attorney's Fees and Costs, and approval of an Incentive Award for Graham. The Parties' filed a Joint Motion for Preliminary Approval of Settlement (Doc. 64). This Court approved the Joint Motion for Preliminary Approval of the Settlement (Doc. 65).  In support of this Motion, Plaintiff states the following:

## BRIEF OVERVIEW OF MOTION

On May 3, 2016, Plaintiff, Denise Graham, filed a Class Action Complaint styled *Denise Graham v. Pyramid Healthcare Solutions, Inc.*, in the United States District Court for the Middle District of Florida, Tampa Division (the "FCRA Litigation"), asserting claims against Defendant under the Fair Credit Reporting Act ("FCRA") on behalf of herself and on behalf of a proposed class of similarly situated individuals. The Parties have since reached an agreement that has been preliminarily approved by the Court (*see* Doc. 65), and if later granted final approval by this

Court, will resolve all claims of the Named Plaintiff and each of the  putative class members.  By this Motion, Plaintiff seeks Court approval of the agreed-upon amounts of attorneys' fees, costs, and incentive award included in the Settlement Agreement.

Pursuant to the Court's Order Preliminarily Approving the Parties' Class Action Settlement Agreement (Dkt. 65), notice has already been sent out by the class administrator to the 321 class members and the results have been overwhelmingly positive.  Specifically, not a single objection was received. Further, no state attorney general or regulator has objected to any portion of the agreement.

Specifically, the settlement provides for settlement payments to be made to approximately 321 class members, each receiving $100.00.  The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement.  This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts.  Besides the actual money obtained, Defendant stopped using the form at issue.

In addition to each class member automatically receiving a check for $100.00, Defendant agreed to and has paid to fund a professional class administrator to send notice.  These funds, in the amount of approximately $15,000, were agreed to separately and apart from the funds set aside for the class.   The cost of administration will not impact the class members' recovery in any way.

The results achieved by Plaintiff warrant the award of attorneys' fees and costs, as requested by Class Counsel, in the amount of $135,000.00.  Defendant does not oppose the fees or costs sought by Plaintiff or the $7,500.00 incentive award sought by Plaintiff.  The requested fees are justified by the work and investment required of Plaintiff's counsel, coupled with the

2

risk involved in prosecuting these claims, the level of skill required, the complexity of the case, and the ultimate results obtained.  For these reasons, the Court should grant this Motion in its entirety.

<div align="center">

**SUMMARY OF LITIGATION AND SETTLEMENT**

</div>

**A.**    **Plaintiff's Claims**

In October of 2015, Plaintiff filled out Defendant's employment application and hiring documents. At that time she applied, she was provided with FCRA disclosure documents that violated of the FCRA because they are not in the "stand-alone form" as mandated by 15 U.S.C. § 1681b(b)(2)(A).   Plaintiff alleged that Defendant routinely obtains and use information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relied on such information, in whole or in part, as a basis for adverse employment actions, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

Plaintiff further alleged that while the use of consumer report information for employment purposes is not per se unlawful, it is subject to disclosure and authorization requirements under the FCRA. Plaintiff's Complaint alleged that Defendants violated these requirements by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute.  Specifically, Plaintiff alleged that Defendants violated 15 U.S.C. § 1681b(b)(2)(A)(i) and 15 U.S.C. § 1681b(b)(2)(A)(ii) by inserting a plethora of extraneous information into forms purporting to grant Defendant authority to obtain and use consumer report information for employment purposes.

Based on the foregoing alleged violations, Plaintiff asserted FCRA claims against

Defendant on behalf of herself and Defendants' employees and prospective employees.   In Counts One and Two, Plaintiff asserted two FCRA claims under 15 U.S.C. §§ 1681 b(b)(2)(A)(i)-(ii) on behalf of an "Improper Disclosure and Authorization Class," consisting of:

> **All Pyramid Healthcare Solutions, Inc. employees and job applicants in the United States who were the subject of a consumer report that was procured by Pyramid Healthcare Solutions, Inc. within five years of the filing of this complaint through the date of final judgment in this action as required by the FCRA.**

## B.    Defendant's Defense

Defendant strongly defended the lawsuit.  Defendant's defense including filing multiple motions to dismiss, opposing class certification and moving the Court for summary judgment. For the duration of the litigation, Defendant denied any liability, and specifically denied that inclusion of additional language in its disclosure form is a willful violation of the FCRA, and denied that statutory damages are appropriate in this case. As part of the Settlement Agreement, Defendant specifically denies that it has engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, and denies that it has any liability whatsoever.

## C.    Class Counsel are Entitled to Recover Fees and Costs.

The FCRA contains a fee-shifting provision mandating that "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3).  "When used in a federal fee-shifting statute, the term 'prevailing party' [is] a legal term of art."  *Hutchinson v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (201)).  "The concepts that shape the term apply broadly to the entire universe of federal fee-shifting statutes."  *Id.*  "In the Eleventh Circuit, when a court either incorporates the terms of a settlement into its final order or expressly retains

jurisdiction to enforce the settlement, the result will bear the necessary judicial imprimatur to support prevailing party status." *Matthew v. Dekalb County Sch. Sys.*, 244 F. Supp. 2d 1331, 1342 (N.D. Ga. 2003). Courts regularly determine plaintiffs to be "prevailing" parties as that term is used in various fee-shifting statutes. *See e.g., Head v. Medford,* 62 F.3d 351, 351 (11th Cir. 1995). Thus, provided the Court approves the parties Settlement Agreement, Plaintiff is a prevailing party and is entitled to fees and costs under the FCRA.

Class counsel aggressively pursued the Class's claims. Class counsel was able to successfully oppose motions to dismiss and summary judgment. Class counsel successfully moved this Court to certify the Class.

The parties have sought and were granted preliminary approval from the Court of the Settlement. (Doc. 65). The Settlement was reached as a result of extensive, good-faith, arm's length negotiations between the parties. The Settlement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the FCRA to facts of this case. In an effort to avoid extensive, costly litigation over these issues, the Plaintiff and Defendant, through their respective counsel, engaged in significant negotiations regarding a possible resolution of the FCRA Litigation.

The Settlement Agreement, if granted final approval at the February 2, 2018, fairness hearing, will resolve all claims of the Plaintiff and all members of the Improper Disclosure Class in exchange for Defendant's agreement to pay $100.00 to each of the 321 class members. The Plaintiff shall have, in addition to the claim provided her as a member of the Improper Disclosure Class, an additional claim in the sum of $7,500 as an Incentive Payment for the services provided to the Settlement Class in connection with her prosecution of this action.

Based on research done by Defendant, the Parties believe that the Settlement Class constitutes all of the employees encompassed by the class definition. Following the effective date, the members of the Settlement Class (including the Class Representative) who do not opt-out of the settlement shall be entitled to the Settlement Payment amount of $100.00. The Settlement falls within the range of reasonable litigation possibilities. Plaintiff contends that there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class, and the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed on its defenses. Additionally, and as separately negotiated from the Settlement Amount, upon distribution to the Class the parties have agreed that Class Counsel shall be entitled to receive attorneys' fees and costs in the sum awarded by the Court not to exceed $135,00.00 (the "Requested Fee").

Where there is no evidence of collusion and no detriment to the parties, as is the case here, courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' 'best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.'" *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). Here, the excellent results achieved for all members of the Class refute any potential inference of collusion or impropriety. Furthermore, Defendant has already agreed to the fees and costs sought by Class Counsel. "A court should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc., Derivative Litig.*, Case No. 06-4128, 2008 U.S. Dist. LEXIS 108195, *12 (N.D. Cal. 2008); *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149, (11th Cir. 1983) (noting courts are often deferential to the opinions of counsel in class action settlements). Thus, the amount sought should be approved.

**D.      Class Counsel Spent Considerable Time Pursuing Class Claims.**

Class Counsel expended considerable time in prosecuting and settling this case. Class Counsel's raw lodestar along with expenses as of the filing of this Motion, representing both fees incurred and hours reasonably worked, is actually $140,956.25, more than the $135,000 sought. The total costs incurred are $2,458.50 which, when added to the $140,956.25 bring the undersigned's current total investment in the case to $143,414.75.  But Plaintiff seeks only the Requested Fees and Costs of  $135,000.  The breakdown by attorney is as follows:

| Name | Number of Hours | Hourly Rate |
| --- | --- | --- |
| Marc R. Edelman | 296.75 | $140,956.25 |
| Other timekeepers | 17 | $0 (not seeking fees) |

These numbers are supported by the declaration of the undersigned (*see* Exhibit A) and billing records (Exhibit B) and invoices (Exhibit C) filed contemporaneously herewith.  The declaration by the undersigned provides the hourly breakdown and hourly rates.  A statement of the experience and expertise of the undersigned is also set forth in the attached declaration. Further, the declaration and billing invoices provide a breakdown of the costs incurred.

Importantly, the raw lodestar only represents work performed up to the filing of this Motion.  In addition to the work done thus far, the final Motion for Approval of the Agreement still needs to be reviewed and edites.  If the Court grants final approval of the Settlement, Class Counsel will continue to represent the Class, including monitoring the settlement to ensure that class members receive their settlement checks and/or replacement checks as necessary, and will continue to respond to inquiries from class members, if they arise.  As a result, Class Counsel will have significantly more time in this matter to bring it to full and final resolution.

## **MEMORANDUM OF LAW**

In evaluating the reasonableness of attorneys' fees in similar cases, the Court is guided by the twelve factor analysis set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974.  The twelve factors in determining court-awarded attorneys' fees are:

> (1) The time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

*Camden I condo. Ass'n v. Dunkle*, 946 F.2d 769, 772 (11th Cir. 2009) citing *Johnson,* 488 F.2d at 717-719.  Here, based on the key factors relevant to this litigation, the Requested Fee is consistent with the *Johnson* factors.  In addition to these factors, other pertinent factors can include the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees required by counsel, and the economics involved in prosecuting a class action.

1.   **The Time and Labor Required Spent on Case was Significant, but Reasonable.**

As described in detail above, the significant amount of time and labor required to bring this matter to settlement is consistent with the Requested Fee.  Class Counsel expended considerable time conducting exhaustive FCRA class action-research; drafting and filing the complaint and Amended Complaint; drafting and serving class wide interrogatories, requests for production and Fed.R.Civ.P. 30(b)(6) notice; meeting with the client on multiple occasions; reviewing and analyzing class-related information submitted by Defendant, including the putative class list; preparing and attending  mediation; deposing Defendant's corporate representative; defending Plaintiff's deposition; drafting and  editing a 20 page response to Defendant's motion to dismiss; drafting a 21 page response to Defendant's motion for summary

judgment; drafting and editing an 18 page motion for class certification; reviewing, editing and revising the 24 page settlement agreement; reviewing, editing and revising the joint motion for preliminary approval. Additionally, as set forth above, the Parties' motion for final approval still must be briefed and class counsel must attend the Final Fairness Hearing on February 2, 2018.

In the event that the Court grants final approval of the settlement Class Counsel will continue to represent the Class. Class Counsel will defend the settlement against appeals by objectors, if any, will monitor the settlement to ensure that class members receive their settlement checks and/or replacement checks as necessary, and will continue to respond to inquiries from class members. Therefore, Class Counsel will have significantly more time in this matter to bring it to full and final resolution than the hours reflected in the attached supporting documentation.

The number of hours that Class Counsel is claiming is reasonable. Class Counsel made every effort to prevent the duplication of work or inefficiencies. Class Counsel performed meaningful work for several months litigating this case from inception. Class Counsel performed this work entirely on a contingency fee basis and has not been compensated for his time, or for the costs already expended by Plaintiff's counsel's firm totaling $2,458.50.

**2./3.** **This Case Presented Novel and Difficult Questions Requiring a High Level of Skill to Perform the Legal Service Properly.**

The second *Johnson* factor recognizes that attorneys should be appropriately compensated for accepting novel and difficult cases. *Johnson*, 488 F.2d at 718. The third *Johnson* factor is the "[t]he skill requisite to perform the legal service properly." *Johnson*, 488 F.2d 718. This third factor ties directly to the second *Johnson* factor and requires the judge to "closely observe the attorney's work product, his preparation, and general ability before the

court."  *Id*.  Because the second and third Johnson factors are tied together, below they are analyzed simultaneously.

Courts in this Circuit recognize that class actions involving various legal theories are, by their nature, very difficult. *See Yates v. Mobile County Personnel Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983)(extremely complicated litigation requires thorough and detailed research of almost every question involved); *Behrens*, 118 F.R.D. at 547 (observing that the size of the class, the difficult theories of liability, and the always-troublesome problems associated with damages demonstrated that the case was an awesome and complex matter masterfully handled by plaintiff's counsel).

Unlike other common employment law-related claims, *e.g*., suits brought under the Fair Labor Standards Act, there were relatively few cases with FCRA issues brought under 15 U.S.C. § 1681b(b)(2)(A).  Unlike the much more common FACTA cases (which also fall under the FCRA and are relatively common in this District), there are relatively few FCRA class actions brought under 15 U.S.C. § 1681b(b)(2)(A) pending in this District of which Class Counsel is aware, or that have ever been filed, much less preliminarily certified.  In fact, there have been articles published in legal publications discussing the "new" FCRA class action lawsuit trend.[1] As a result, Class Counsel submits that FCRA class actions under 15 U.S.C. § 1681b(b)(2)(A) are relatively novel and present difficult questions of both fact and law.  Accordingly, FCRA class cases, including this one, raise novel issues that only a small subset of the bar are presently seasoned to handle.  Class Counsel here had the expertise to bring this case and the expertise to marshal it to a favorable outcome.  This factor also weighs heavily in favor of the reasonableness of the Requested Fee.

---

[1] http://www.employerlawreport.com/2014/11/articles/workplace-privacy/the-fcra-is-the-new-flsa; *see also* http://www.law360.com/articles/567301/prepare-for-the-wave-of-fcra-class-actions.

The Eleventh Circuit recognizes skill as the "ultimate determinate of compensation level," as "reputation and experience are usually only proxies for skill." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1300.  In *Norman*, the Eleventh Circuit listed several elements that district courts may consider in determining an attorney's skill. 836 F.2d at 1300.

First, the Court explained that skill may be measured by evaluating the degree of prudence and practicality exhibited by counsel at the beginning of the case.  *Id*. Second, skill may manifest itself through arduous preparation and efficient organization, particularly if the case goes to trial.  *Id.*  Next, the Court explained that an attorney who has a sharp command of trial practice and a sound understanding of the substantive law, governing the case, such that his time may be spent exploring the finer points raised by the issues, should be compensated at a higher rate of pay than one who has to educate himself just to gain a general working knowledge of trial practice and law. *See id*. at 1301. Finally, the Court noted that persuasiveness is an attribute of legal skill and defines a good advocate as one who advances his client's position in a clear and compelling manner. *Id*. The Eleventh Circuit also explained that the complexity of the case at hand may indicate skill. *See Yates v. Mobile County Personnel Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983).  In evaluating the skill involved, the Court should also consider the quality of Class Counsel's opposition. *In re Sunbeam Sec. Litig.,* 176 F.Supp. 2d 1323, 1334 (S.D. Fla. 2001).

Applying these factors, Class Counsel have shown himself to be highly skilled. The complexity of this new area of class action litigation, the dearth of emerging case law on FCRA class actions, the ability to achieve a favorable outcome despite Defendant's affirmative defenses and highly skilled Defense counsel, coupled with the complexity inherent with any class action,

all demonstrate that Class Counsel is a highly skilled employment law/FCRA practitioner.  This weighs in favor of finding the Requested Fee reasonable.

**4.**      **Preclusion of Other Employment.**

The fourth *Johnson* factor is "[t]he preclusion of other employment by the attorney due to acceptance of the case." *Johnson*, 488 F.2d at 718.  This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes.  Here, the hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation.  Thus, this factor also militates in favor of finding the Requested Fee reasonable.

**5.**      **Customary Fee.**

The rates charged by Class Counsel are well within the customary fees charged for comparable service.   In assessing the reasonableness of hourly rates, courts consider "the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience, and reputation." *Martin v. University of South Alabama,* 911 F.2d 604, 610 (11th Cir. 1990).  Courts look to the forum in which the District is located to determine the hourly rates that should apply. *Id.* ("Common sense dictates that the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee.")

The requested billable rate is $475 for Marc R. Edelman, a 20+ year attorney, former general counsel of a national furniture retailer and current attorney with Morgan and Morgan, P.A., in Tampa, Florida**.**  This rate is consistent with other awards for similar work. *See, e.g., Wiles v. Astrue*, 2011 U.S. Dist. LEXIS 24894, 4 (M.D. Fla. 2011) (approving rates of $700 per

hour in a contingency fee case); *Lockwood v. Certegy Check Serv., Inc.*, Case No. 8:07-cv-1434-T-23TGW (M.D. Fla. 2008) (approving rates of $450 to $750 per hour in a class action).

Class Counsel's customary rate, which was used for purposes of calculating lodestar here, is based on prevailing fees have been approved by other District Courts in the past.  *See, e.g., Wiles,* 2011 U.S. Dist. LEXIS 24894, 4 (approving rates of $700 per hour in a contingency fee case in this District); *Lockwood,* Case No. 8:07-cv-1434-T-23TGW (approving rates up to $750 per hour in a class action in this District); *Owens v. Carrier Corp.,* Case No. 08-CV-02331, Dkt. No. 265244 (W.D. Tenn. 2010) (approving rates in a class action of $300 for associates and $500-$695 for senior partners); *see also Montanez v. Gerber Childrenswear, LLC,* Case No. CV 09-07420-DSF, Dkt. Nos. 269 and 283 (C.D. Cal. 2013); *Kizer v. Summit Partners, LP*, Case No. 1:11-cv-00038, Dkt. No. 33 (E.D. Tenn. 2011).  Accordingly, the rate proposed by Class Counsel is reasonable.

**6.**     **The Case was Taken on Contingency.**

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. *Johnson*, 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees."  *Behrens v. Wometco Enters*., 118 F.R.D. 534, 548 (S.D. Fla. 1988).  As recognized in *Behrens*, without a contingent fee, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing."  *Behrens v. Wometco Enters*., 118 F.R.D. 534, 548 (S.D. Fla. 1988).

Class Counsel undertook significant financial risk in prosecuting this case because it was in a relatively unchartered area of the law and taken on a contingency basis with no guarantee of

recovery.   There were no assurances that the putative class would ever be certified, or that Plaintiff could have or would have overcome Defendant's willfulness defense.

Indeed, Class Counsel incurred significant fees in prosecuting this action and has received no compensation thus far, while also fronting costs and hard totaling nearly $2,458.50. There was a very real possibility that Class Counsel would not recover anything for the Class and lose the costs already incurred.  For these reasons, this sixth *Johnson* factor supports the approval of the requested amount of attorneys' fees.  *Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, 47 (N.D. Ala. July 17, 2012).

**7.**   **Time Limitations.**

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. Time limitations were not an issue in this case.  Thus, this factor is neutral.

**8.**   **Amount Involved and the Results Obtained.**

Class Counsel recovered $32,100 for the benefit of all Class Members. The monetary award for each Class Member is $100.00. The FCRA Litigation would have been complicated, protracted, and expensive. The risk of Plaintiff and the putative class members being unable to establish liability, or failing to overcome Defendants' dispositive motions, were serious hurdles Plaintiff was able to overcome.   Considering the complexities of this case and the vigorous defense of opposing counsel, this is an excellent recovery when there was a very real chance the class would not recovery anything. This factor supports the attorneys' fee sought.

More importantly, in the FCRA context the per-class member recovery of $100.00 in this settlement is in line with per class member settlement amounts in similar cases under the FCRA.[2] Indeed, Class Counsels' efforts to secure this favorable settlement of $100.00 per class member in a "claims made" settlement supports full payment of the attorneys' fees agreed to by Class Counsel and Defendant. Accordingly, given the excellent results achieved, this factor weighs heavily in favor of the reasonableness of the Requested Fee.

9.      **Experience, Reputation, and Ability of the Attorneys.**

Class Counsel set forth his qualifications and prior experience in his attached declaration. This case has, at all stages, been handled on both sides by experienced lawyers whose reputations for effective handling of complex litigation are known throughout Florida. This factor also weighs in favor of awarding the Requested Fee.

10.     **Undesirability of the Case.**

In the above section Plaintiff highlighted the complexity and skill required to prosecute an FCRA class action.  The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery, would make this case highly undesirable for many attorneys. Therefore, this factor, too, supports the requested amount of attorneys' fees.

11.     **Nature and Length of the Professional Relationship with the Client.**

---

[2] *See, e.g. Erin Knight, et al. v. Publix Super Markets, Inc*., No. 3:14-cv-00720 (M.D. Tenn. July 25, 2014 Settlement Agreement and Nov. 12, 2014 Order approving Settlement) (FCRA class members each awarded $75.00); *Townsend v. Sterling Jewelers Inc*., No. 1:13-cv-3903, Plaintiff's Motion for Final Approval of Class Action Settlement (N.D. Ill. August 15, 2014) (Doc. 54) (requesting approval of FCRA class claim where class members who submitted a claim form would receive $50) and *Townsend*, Minute Entry Approving Settlement (N.D. Ill. Sept. 15, 2014) (Doc. 58); *Marcum v. Dolgencorp, Inc*., No. 12-cv-108, Memorandum in Support of Joint Motion For Preliminary Approval of Settlement, (E.D. Va. Oct. 15, 2014) (seeking approval for settlement of inadequate disclosure claim with payments to class members of $53) and *Marcum*, Order of Preliminary Approval of Class Action Settlement (E.D. Va. Oct. 16, 2014) (Doc. 78) (approving settlement); *Beverly v. Wal-Mart Stores, Inc*., No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (Doc. 39) (approving settlement providing for $54 gross amount per class member).

Class Counsel was not representing long-term clients in this matter. This factor is neutral.

**12.     Awards in Similar Cases.**

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719.   The fee award sought here is in line with similar FCRA cases.    The fact that the individual amounts to be distributed to Class members may not be a great sum in relation to Plaintiff's fee request does not make that request unreasonable, particularly when the claims at issue have a low statutory damages cap, like the FCRA and the claims at issue in this litigation.  *See*, *e.g.*, *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (court awarded fees of $69,872 where plaintiff recovered $1,000 statutory fee award); *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn. Sept. 5, 2002) (full lodestar of $43,000 awarded where consumer received $1,000 statutory damage award); *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216 (D.N.J. 1999) (court awarded $57,000 in fees for $5,800 award to plaintiff).  Since Plaintiff prevailed on the only claims raised in the Complaint, the fee award cannot be diminished to maintain some ratio between the fee and the damages.[3]   Therefore, this Court should find the Requested Fee reasonable.

**13.     Time Required to Reach a Settlement.**

This action was originally filed in Florida state court in May, 2016.  Following removal, the parties litigated the case in  this Court for nearly sixteen months before reaching a settlement. Clearly, duration of the litigation, including the intensity of the litigation, justify the attorneys' fees in this case.

---

[3] *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996); *Sheffer v. Experian Information Solutions, Inc.*, 290 F.Supp.2d at 550-51 ("proportionality analysis between the amount of damages awarded and the amount of counsel fees requested . . . is an impermissible basis upon which to reduce a fee award"); *Bonett  v. Education  Debt  Services, Inc.*, 2003 WL 2 1658267, *8 (May 9, 2003); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F.Supp.2d 436, 444 (E.D. Pa. 2002).

14.   **The Economics of Prosecuting a Class Action and Public Policy.**

Without the possibility of recovering an attorneys' fee, most class actions would never be filed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, (1980) (observing that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved person may be without any effective redress unless they may employ the class action device").   Attorneys, like Class Counsel here, who undertake the risk to vindicate legal rights that may otherwise go un-redressed function as "private attorneys general."   *Id*. at 338.   This Court should "treat successfully fulfilling such a role as a *Johnson* factor when awarding class counsel attorneys' fees." *Allapattah Servs. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1217-1218 (S.D. Fla. 2006).

While prosecuting this case Class Counsel risked thousands of dollars in unreimbursed attorneys' time and hundreds of hours of attorney time..   And, furthermore, "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct."   *Id*.   Indeed, absent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients. *Id.*   Thus, the economics of prosecuting this class action, along with public policy, support the Requested Fee sought by Class Counsel.

15.   **Costs.**

Class Counsel also request reimbursement of costs totaling $2,458.50, which will be lumped into the Requested Fee and, in reality, will be absorbed by Plaintiff's counsel's firm. "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1314 (E.D. N.Y. 1985), *modified on other grounds*, 818 F.2d 226 (2d Cir. 1987), *quoted by Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). The district court has a "responsibility to scrutinize the costs for which reimbursement is requested in order to ensure that class counsel is not obtaining a secret or unintended profit." *Int'l Precious Metals Corp.*, 190 F.3d at 1298.

Class Counsel submitted a summary of their expenses in support of this Motion totaling **$2,458.50**, which is, in reality, being absorbed by Class Counsel into the total Requested Fee. The cost total is included in the attached declarations of Class Counsel, along with the appropriate invoices breaking down the following incurred costs, all of which are recoverable. The costs sought are "reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." This amount is included in the $135,000 amount sought by Plaintiff, which also supports a finding by the Court of the reasonableness of this amount. Therefore, the costs incurred by Plaintiff also weigh in favor of awarding Plaintiff the Requested Fee.

**16.** **Incentive Award.**

The Named Plaintiff Incentive Award of $7,500 for Denise Graham should be also awarded. "At the conclusion of a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the

time and effort they have invested for the benefit of the class." *Smith v. Krispy Kreme Doughnut Corp.*, 2007 U.S. Dist. LEXIS 2392, at *4 (N.D.N.C. Jan. 10, 2007) (approving $15,000 service award); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D.Ill. 1993)(collecting cases approving awards from $5,000 to $100,000).   Class Representative Denise Graham has provided a great deal of value to the Class, and the requested award of $7,500 should be awarded.   She missed work on more than one occasion to participate in reviewing documents, participate in finalizing the amended complaint, and attend mediation. Without her, it's entirely possible that 321 people never would have been given the opportunity to cash a $100.00 check, and that Defendant would still be using the forms Plaintiff claims were violative of the FCRA.   Thus, she has been invaluable to this litigation and should receive the Incentive Award of $7,500 she seeks, which, importantly, was agreed to by Defendant pending Court approval.

## CONCLUSION

Class Counsel achieved excellent results for all members of the Class.   To date, the administrator has received no objections to the Requested Fee, or to any other part of the Settlement.   Class Counsel and Defendant negotiated a fair attorneys' fee at arm's length. Defendants do not oppose the fees or costs sought.   For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying Proposed Order granting the Requested Fee, Costs, and Incentive Award.

## CERTIFICATE OF COMPLIANCE WITH M.D. FLA. L.R. 3.01(g)

**Pursuant to M.D. Fla. L.R. 3.01(g), Counsel for the Plaintiff and Class has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and Defendant does not oppose this Motion.**

Dated this 22nd day of January, 2018.

<div style="margin-left:40%">

Respectfully submitted,

**MORGAN & MORGAN, P.A**.

**/s/ Marc R. Edelman**
MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
Morgan & Morgan, P.A.
201 N. Franklin Street, #700
Tampa, FL 33602
Telephone 813-223-5505
Fax:  813-257-0572
Email: MEdelman@forthepeople.com
Attorney for Plaintiff

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY that on this 22nd day of January, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to:

Jennifer  Monrose Moore
Jennifer.moore@ogletree.com
Grant  D. Peterson
E-mail: grant.petersen@ogletree.com
Vanessa A. Patel
E-mail: vanessa.patel@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, FL 33602

<div style="margin-left:40%">

**/s/ _Marc R. Edelman_____**
MARC R. EDELMAN, ESQ.

</div>